*Electronically Filed*
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT
CASE NO. 3:17-cv-00066-GFVT

AMY JERRINE MISCHLER                                                                PLAINTIFF

**GOVERNOR MATT BEVIN AND CHFS DEFENDANTS'**
v.       **MEMORANDUM OF LAW SUPPORTING**
**THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

GOVERNOR MATT BEVIN, *et al*,                                                DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Governor Matt Bevin joined by CHFS Deputy Secretary Timothy Feeley; CHFS Service Region Administrator Susan Howard; CHFS Service Region Administrator Associate Debra Wilcox-LeMaster; "Kentucky Social Worker" Kathy Larder; "Kentucky Social Worker" Deborah Webb; "Kentucky Social Worker" Shereena Hamilton-Spurlocke[1]; "Kentucky Social Worker" Latoya Jones; "Kentucky Social Worker" Wilma Taylor; CHFS FSOS (Field Service Office Supervisor) Mike Hartlage; "Kentucky Social Worker" Gwen Hatfield; CHFS Deputy General Counsel Mona Womack; CHFS Internal Policy Analyst II Debbie Dile; former CHFS Regional Attorney Zack Ousley, named as the successor to David Adam; "Jane Doe"[2]; unknown state employee Emily Gray-Jones (collectively the "CHFS" Defendants") submit this supporting memorandum of law, to the motion they filed pursuant to Civil Rule 12(b)(1) and 12(b)(6) for this Court to dismiss Plaintiff Amy Jerrine Mischler's entire Complaint, or alternatively that this Court dismiss each claim Plaintiff has asserted against them in their official capacities.[3]

---

[1] Plaintiff alternatively refers to this defendant's last name as "Hamilton-Spurlock" and "Hamilton-Spurlocke."

[2] "Jane Doe" is described as the person who "reinstated the second substantiation against Ms. Mischler in the official cabinet records" and also the person who "destroyed Ms. Mischler's records a second time [2013], at the Cabinet for Health and Family Services though such records are required per Federal Regulations to be maintained for twenty five years." It is not clear from these pleadings if "Jane Doe" is one or more persons or if they were employed by CHFS.

[3] Governor Bevin was sued only in his official capacity. As this Court observed, many of the defendants are not in the state directory of current employees. It is not known if all the "Kentucky Social Worker" defendants were previously

For reasons argued below, repeating some of the arguments already made by non-Cabinet co-defendants, Amy Mischler's Complaint fails to state a claim upon which relief can be granted. Her claims against State government defendants are also barred by sovereign immunity and the Eleventh Amendment to the Constitution of the United States. Plaintiff is attempting to re-litigate time barred claims, many of which she has previously litigated and lost, all stemming from an underlying child custody dispute with her ex-husband. Her children are now adults but the litigation over their custody being awarded to Mischler's ex-husband is never ceasing.

Movants have also filed a separate motion for this Court to impose sanctions on Plaintiff and enjoin her from filing new federal court complaints without leave of court. This Court has discretion to craft a mechanism that addresses Mischler's flagrant abuse of the judicial system. She has a demonstrated history of filing frivolous lawsuits. Dismissals have been ineffective at stemming the tide; she has simply returned by filing nearly identical lawsuits adding new defendants to the cast of those unfortunate defendants named before. Anyone who opposes or disagrees with Mischler's theories of a concerted plot against her is accused of "fraud" or joining "the conspiracy." Accordingly, this Court should stop Mischler's harassment while preserving her access to the federal courts for legitimate purposes.

**PROLOG AND SYNOPSIS OF THE CASE**

As best we can determine from examining Mischler's most recent Complaint and reviewing her voluminous litigation history, described in greater detail below, the genesis of this Section 1983 civil right case is the fact that a Kentucky domestic relations court judge named Julie

---

employed by the Cabinet, but the same defenses argued here would apply if they were state employees at the CHFS, the Kentucky Board of Social Work, or any other Kentucky state agency. As this Court noted, the individual capacity CHFS Defendants have not been served with process. *See* Order, Doc. # 25, Page ID # 325-330. None of these persons have requested legal representation from the Cabinet's office of legal services in their personal capacities. This defense of the official capacity claims should not be construed by Plaintiff as waiving or limiting the Cabinet employees' due process rights requiring personal service of process in the manner required by the Civil Rules of Procedure, or as waiving any of their individual capacity affirmative defenses.

Paxton entered a Domestic Violence Order ("DVO") against Mischler at the behest of Jonah Stevens during the parties' bitter child custody dispute. Plaintiff's ex-husband sought the order because Mischler was marching her two children in Pikeville with a sign protesting him on a hot 80 degree day when one child had strep throat. Someone reported Mischler to CHFS for child neglect based on the DVO. The Cabinet substantiated neglect based on the DVO. The DVO was later vacated on appeal because it had not been properly sworn before a notary. Mischler's substantiation of neglect was appealed and vacated because the underlying DVO upon which it was based was set aside. Jonah Stevens was eventually granted full custody of both children. A court appointed psychologist, Dr. Sally Brenzel, determined Plaintiff was not the most appropriate caregiver of the two parents and recommended Jonah Stevens be granted full custody.[4] Mischler challenged the family court judgment, but the judgment was affirmed on appeal.

Seething with resentment against her ex-husband, who happens to be a lawyer, and the Kentucky judiciary who allegedly was biased to favor him, Mischler has gone on a 10- year litigation spree against the Kentucky judiciary, her ex-husband, the court appointed psychologist, and to a lesser extent, employees of the Cabinet. Mischler has requested appointments of special judges, accusing sitting state and federal judges of bias or joining the conspiracy. Mischler has also filed mandamus actions in Kentucky's appellate courts. She has filed recurring Open Records Act requests for the same Cabinet records over the past ten years, looking for evidence to support her conspiracy theory. The Cabinet has provided her most of the records she has requested.

This brief history brings us to the latest developments. Way back in 2006, after a substantiation of child neglect was entered, and before it was reversed on administrative appeal,

---

[4] *See* Dr. Brenzel's motion to dismiss and memorandum of law for reference. Doc # 15 and 15-1, with referenced exhibits, 15-3, and 15-4, Page ID # 237-264. Dr. Brenzel relies on the statute of limitations and her quasi-judicial immunity from suit in asking this Court to dismiss her from the case.

3

Plaintiff alleges a social worker in the Pike County CHFS office named Shereena Hamilton-Spurlocke was assigned to work with Mischler on a prevention plan to protect her children at the time Amy shared joint custody of them with Jonah. Hamilton-Spurlocke and Mischler agreed to meet at Plaintiff's home to work on the plan. Mischler recently discovered Hamilton-Spurlocke is a casual Facebook friend with her ex-husband's sister-in-law. The two attended the same high school. Mischler now imagines that long-ago meeting in her home was part of "the conspiracy." She alleges Hamilton-Spurlocke gained entry under false pretenses to "spy on her." Mischler alleges the coincidental Facebook connection gives her legal grounds to sue Hamilton-Spurlocke under the Fourth Amendment and also sue more than a dozen CHFS current or former managers or employees (assuming for purposes of this motion the social workers were Cabinet employees), for not agreeing with Plaintiff that her Fourth Amendment constitutional rights were violated back in 2006, from the alleged Hamilton-Spurlocke "spying incident."

For good measure, Mischler has also sued Governor Matt Bevin and filed a motion for emergency relief against him. The governor has responded with a simultaneously filed response. Plaintiff is upset that he has not appointed special prosecutors to investigate the allegedly corrupt Kentucky judicial system, and that he has not seen fit to do Plaintiff's bidding to rectify whatever imagined harms the Cabinet is doing now as part of "the conspiracy." Plaintiff is persistent. Litigating and losing time and again has not stemmed the flood of litigation. Enough is enough. The time has come to protect the defendants named and the federal courts from Mischler's serial litigation tendencies and put an end to her vindictive or delusional claims against all levels of the Kentucky judiciary and now the Cabinet. She has wasted enough precious judicial resources.

## STATEMENT OF THE CASE

### A.    The Plaintiff

Plaintiff Amy Jerrine Mischler, appearing pro se, has filed numerous serial lawsuits in this court and other courts. According to the Kentucky Courtnet webpage, which shows records of state court cases, Mischler unsuccessfully sued the Kentucky Floyd Board of Education in Floyd Circuit Court, Civil Action No. 99-CI-742. She unsuccessfully initiated a Domestic Violence proceeding against her ex-husband Jonah Stevens, in Pike District Court Case No. 02-D-00202-001; but successfully defended a Domestic Violence proceeding he filed against her in Pike District Court Case No. 02-D-00202-003;[5] she litigated and lost a state court complaint she filed in Franklin Circuit Court in Civil Action No. 08-CI-01039. In that case she filed pro se, she named numerous parties including the Commonwealth of Kentucky, the Pike County Commonwealth's and County Attorneys, a Pike County District Court Judge, the Appalachian News Express newspaper, CHFS manager Susan Howard, the Supreme Court of Kentucky, the State Police of Kentucky, the Kentucky Prosecutor's Council, her ex-husband, and an assortment of Kentucky judges.

Mischler litigated and lost a second complaint alleging state corruption in a case she filed with another serial pro se litigant named James S. Faller II, in Franklin Circuit Court, Civil Action No. 09-CI-00922, transferred to Russell County and dismissed in Civil Action No. 09-CI-00309. She litigated and lost a case she filed against the Kentucky Justice and Public Safety Cabinet in Franklin Circuit Court Civil Action No. 09-CI-01182; and she litigated and lost a case she filed against the Frankfort police department in Franklin Circuit Court Civil Action No. 10-CI-00370. Plaintiff litigated and lost a case she filed against former Attorney General Jack Conway and

---

[5] These competing Domestic Violence Orders appear to be at the root of most of the subsequent litigation Mischler has filed over the years against her ex-husband and various judges and prosecutors, as well as the present case.

several known or unknown assistant attorneys general in Franklin Circuit Court Civil Action No. 10-CI-00570.

The Kentucky Court of Justice webpage reveals Mischler has unsuccessfully appealed or sought discretionary review, or filed original mandamus actions against an assortment of Kentucky Court of Appeals judges, or state circuit judges in at least 10 prior cases.[6] These appeals and mandamus actions stem from her divorce and child custody fight, or her spin-off litigation where she sued trial level judges, appellate court judges, and special state court judges involved in her divorce and child custody cases; or where she sought mandamus relief in the Kentucky Court of Appeals. Mischler has four pending mandamus actions filed in the Kentucky Court of Appeals at this time, all attempting to intercede in the child custody claims involving real party in interest Jonah Stevens.

The federal PACER system reveals Mischler has filed two prior civil actions in this Court (described below) and she recently litigated and lost a federal court mandamus action against the current Justices of the Supreme Court of Kentucky. See *Mischler v. Cunningham et al*, 3:17-cv-00029-GFVT. This Court denied Plaintiff relief. Mischler appealed to the Sixth Circuit Court of Appeals, but her appeal was dismissed for lack of prosecution. In the Western District, she has filed suit seeking permanent injunctive relief against an assortment of Kentucky judges and the Kentucky Bar Association, *Mischler v. Lambert et al*, Case No. 3:08-cv-00231-JHM-DW. She also unsuccessfully filed suit against the federal government in *Mischler v. Office for Civil Rights of this United States Department of Health and Human Services et al,* in Case No. 1:17-cv-00368-LMM, in the Northern District of Georgia.

---

[6] https://courts.ky.gov/Pages/default.aspx.

6

**B.      Overview of Plaintiff's latest federal court complaint**

Mischler's present case, a 42 U.S.C. § 1983 civil rights action, seeks injunctive relief against the Governor of Kentucky. She seeks damages from about 27 other named defendants. These include the private law-firm that successfully defended the Kentucky judiciary in one or more of Mischler's prior cases, several Kentucky prosecuting attorneys, five current or former state judges or justices of all levels of the Kentucky judiciary, thirteen present or past alleged employees of the Cabinet for Health and Family Services ("CHFS"), the Kentucky Attorney General and two of his assistants, and Dr. Sally Brenzel, the psychologist appointed by the Kentucky circuit court to evaluate Mischler's capacity to parent her children in conjunction with Plaintiff's decades old child custody dispute with Jonah Stevens. Mischler's children are now adults but her obsessive crusade to somehow vindicate herself and secure criminal prosecutions against various state judges from imagined wrongs persists.

Plaintiff's federal civil rights claims are premised on defendants' alleged infringements of her rights under the First, Fourth, or Fourteenth Amendments to the Constitution of the United States. Her supplemental state law claim against Governor Bevin is in the nature of a mandamus action, asking that this Court order the governor to enforce the Kentucky Constitution, compel him to call for a special prosecutor; force him to "remove false records" within the CHFS that label her a substantiated child abuser; and issue an executive order allowing her to pursue time barred administrative actions against the named various CHFS Defendants. Several defendants have already filed motions to dismiss and attached copies of some of Mischler's prior complaints, judgments dismissing, and appellate court orders affirming, which speak for themselves.

In addition to those cases previously mentioned, Mischler most recently litigated and lost a state court complaint she filed in the Kentucky Franklin Circuit Court, where she sued CHFS,

7

Governor Matthew Bevin, in his personal capacity and official capacity as governor for the Commonwealth of Kentucky and Andy Beshear, in his official capacity as Attorney General for the Commonwealth of Kentucky arguing they were negligent.[7] The Franklin Circuit Court refused to grant her any relief and recently dismissed her latest state court case with prejudice.

This Court may take judicial notice of all the prior Mischler complaints, judgments, orders and court filings without converting the CHFS Defendants' motion to dismiss into a motion for summary judgment.[8] Her prior litigation history is fleshed out in greater detail below with references to the prior court filings documenting her long litigious history:

### C. The Underlying *Mischler v Stevens* domestic relations case in Pike Circuit Court

Jonah Stevens described all the prior state domestic relations court litigation in his Sixth Circuit Court of Appeals brief,[9] paraphrased and recited here. The case citations are to court filings in *Mischer v. Stevens*, United States District Court for the Eastern District of Kentucky, Hon. Thomas W. Phillips presiding, 7:12-cv-00008. The state court records show:

> The parties … were married on July 30, 1991, and separated on May 30, 2001. There were two children born of the marriage, Z.S. and U.S. The parties came to an agreement dissolving their marriage, and that the parties would share joint custody of their children. The agreement (Doc# 186-2, Pg. ID#3502, Agmt.) was adopted by the court and incorporated by reference in its final decree of October 24, 2001 (Doc# 186-2, Pg. ID#3499, Decree).

> On July 23, 2002, Ms. Mischler moved the Court to modify custody without supporting Affidavits. The basis for her motion was that she was to begin law school in August of 2002 in Grundy, Virginia. The presiding Judge, Judge Thompson, recused, and a disposition of Ms. Mischler's motion is not found in the record. On August 8, 2002, Ms. Mischler obtained an Emergency Protective Order against Mr. Stevens. Mr. Stevens, in turn, obtained an Emergency Protective Order against Ms. Mischler. Those cases were 02-D-202-001 (Doc. # 186-3, Pg. ID#3508,

---

[7] Copies of Mischler's state court negligence complaint with exhibits and her emergency motion for injunction in the Franklin Circuit Court, Civil Action No. 17-CI-980, the state court's order and judgment dismissing and the unofficial Kentucky Administrative Office of the Court case history obtained through the Kentucky Court of Justice Courtnet system are attached as here as Exhibits 1 through 4 to this motion and memorandum.

[8] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

[9] *See* 2016 WL 6834799 (C.A.6) (Appellate Brief).

EPO) and 002 (Doc.#186-3, Pg. ID# 3511, EPO), respectively, in the Pike Family Court.

Following a hearing on August 7, 2002, those competing petitions were dismissed by Judge Julie Paxton, the presiding Judge of the Floyd Family Court, who had been appointed as special Judge (Doc.#186-3, Pg. ID#3514, Assignment Sp. Judge).

The Orders dismissing are forms utilized in Family Court practice which require merely the checking of a box and a signature of the Judge. There also was a typed Order that was entered on September 23, 2002, several days after the form Orders had been entered (Doc.#186-4, Pg. ID#3515, Order). That Order provides and notes that the domestic violence petitions are dismissed. That Order also notes that certain motions regarding custody have been filed in the parties divorce case. The Order further notes that, until a hearing can be held, "the following custody and visitation arrangement is acceptable." Pending the hearing, the parties' minor children would remain at the Respondent (Jonah Steven's) mother's home.

The Order concluded by allocating time sharing to each parent. Nothing else appears in the record following that Order. It was not appealed. No motion was made to set it aside. The parties thereafter operated under their own informal custody arrangement, splitting time with the children.

Mischler began law school in Grundy, Virginia in the fall of 2002, and graduated in 2005. The parties continued to share time with the children by informal agreement, Stevens paid child support by informal agreement, and there is nothing in the record from September 23, 2002 until November of 2005, wherein the Pike County Attorney moved to intervene to establish a child support and medical obligation from Stevens (Doc.#186-5, Pg. ID#3517, Motion to Intervene). In December of 2005, Mischler resumed actively litigating in the divorce case attempting to obtain custody of the children. Mischler unfortunately developed mental health issues, and Stevens was forced to file an emergency motion for temporary custody in the divorce case, as well as on April 24, 2006, an Emergency Protective Order on behalf of the minor children. Mischler had the parties' minor child holding signs on the streets of downtown Pikeville, alleging that the minor child was sick and that his father would not provide medical insurance for the children (Doc.#186-6, Pg. ID#3518, Newspaper Article).

Stevens argued, "this incident is an example of [Mischler's] deteriorating mental condition." Thereafter, the parties litigated custody of the children in the CI (divorce) case. Judge Nichols was appointed special Judge, and ordered a custodial evaluation be performed by Dr. Sally Brenzel and that Ms. Mischler continue to have supervised visitation.

Ultimately, a custodial evaluation was prepared by Dr. Brenzel (Sealed Doc. #186-7, Pg. ID#3519, Custody Evaluation). The Court conducted a hearing over the

course of two days and entered its Judgment, awarding sole custody to the Defendant, Jonah Stevens (Doc.#186-8, Pg. ID#3535, Custody Order). Mischler filed an appeal but her appeal was dismissed (Doc.#186-9, Pg. ID#3558, Court of Appeals Dismissal).

Since then, Mischler has litigated in the Circuit Courts of Pike County, Franklin County and the Federal Courts, complaining that her rights have been violated, that there has been a conspiracy by everyone from the Kentucky Supreme Court Justices, to the Kentucky Bar Association, to the Trial Commissioner of the Pike District Court, to deprive her of her constitutional rights. Appellant filed the federal civil rights action later appealed to the Sixth Circuit Court of Appeals action on January 28, 2013 (Doc.#1, Pg. ID#1, Complaint).

### D.   Mischler's prior federal Civil Rights claims against the Kentucky Judiciary and others collaterally attacking the custody order

Susan Stokley Clary, in her individual and official capacity as clerk of the Kentucky Supreme Court Clerk; and Larrin Thompson, in her individual and official capacity as former law clerk to former Kentucky Supreme Court Justice Will T. Scott in their Sixth Circuit Court of Appeals brief[10] explained what is recited here as background information that provoked Mischler to sue the Kentucky judiciary and the claims she made against them. The citations to the record are from the federal civil rights complaints referenced in the text:

In January 2013, Amy Mischler, plaintiff/appellant, filed a complaint (Case No. 3:13-cv-08) against her ex-husband, Jonah Stevens, and a host of judges and judicial officers, including John D. Minton, Chief Justice of the Supreme Court of Kentucky. In May 2013, Ms. Mischler filed her original complaint in this matter (Case No. 3:13-cv-26) against Susan Stokley Clary, the Clerk of the Supreme Court of Kentucky. Her complaint in this case was not, however, served on Ms. Clary at that time.

In November 2013, Ms. Mischler amended her complaint in 3:13-cv-26, adding as defendants Chief Justice John Minton, the Kentucky Supreme Court, and Larrin Thompson (then a law clerk to then Kentucky Supreme Court Justice Will T. Scott). (Amended Compl., Doc. 12.) The amended complaint in 3:13-cv-26 was not served at that time. Although the complaint in the case that is the subject of this appeal (3:13-cv-26) had not yet been served, in December 2013 Case No. 3:13-cv-26 was consolidated with Case No. 3:13-cv-08. (Doc. 19, 22.)

---

[10] *See* 2016 WL 6834799 (C.A.6) (Appellate Brief)

Other than her claims against her ex-husband, all of Ms. Mischler's claims in 3:13-cv-08 against the various judges and judicial officers, including her claims against Chief Justice Minton, were dismissed--some following the 28 U.S.C. § 1915(e)(2) screening process for pro se complaints and the rest following motions to dismiss--which dismissal this Court affirmed. *Mischler v. Stevens*, 14-5567 (6th Cir. Sept. 9, 2015) ("*Mischler 2015* "). Following *Mischler 2015*, the district court severed the two cases, ordering that 3:13-cv-08 proceed only against Jonah Stevens, and that this case, 3:13-cv-26, proceed against "Susan Stokley Clary, the Kentucky Supreme Court, and Larrin Thompson." (Doc. 23 Page ID# 257.)

The district court granted Ms. Mischler's motion to again amend her complaint in 3:13-cv-26 and directed that "a complete, amended and restated complaint against only the remaining defendants in case number 3:13-cv-26 set forth above " (Ms. Clary, the Supreme Court, and Ms. Thompson) be filed "within 30 days." (*Id*. at Page ID# 257-58.) Although Ms. Mischler's late request for additional time to comply with the court's order was granted (Doc. 25), she was late in filing her second amended complaint. (Doc. 28, Page ID# 360.) In that late second amended complaint, Ms. Mischler asserted "claims against new defendants, including defendants who have been previously dismissed in the consolidated case." Due to Ms. Mischler's failure to comply with the court's orders, the court struck the second amended complaint from the record. (*Id*. Page ID# 360-61.)

The court directed that this case "will proceed against defendants Susan Stokley Clary, the Kentucky Supreme Court, and Larrin Thompson on the allegations contained in the First Amended Complaint," thereby eliminating Chief Justice Minton (a party in 3:13-cv-08, whose dismissal was affirmed on appeal) as a party in this case. (*Id*. at Page ID# 361.) The first amended complaint was then served on Ms. Clary, Ms. Thompson, and the Kentucky Supreme Court; it was never served on Chief Justice Minton. (Doc. 39, 40, 41, 43.)

The operative complaint (the first amended complaint) made claims against Ms. Clary, the Kentucky Supreme Court, and Ms. Thompson solely under 42 U.S.C. § 1983. The basis for the district court's jurisdiction was 28 U.S.C. § 1331(a).

Based on a host of reasons, the defendants moved to dismiss Ms. Mischler's first amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in March 2016. (Doc. 42.) The district court granted the motion and dismissed the case on July 11, 2016. (Doc. 58, 59.). The Sixth Circuit later affirmed.

### E.   Mischler's grievances and past complaints against the Cabinet

Over the following years, Mischler has suffered from a delusion that employees of the Cabinet for Health and Family Services have conspired against her with her ex-husband and the various state judges and court clerks she has sued. She frequently writes or calls to discuss "the

11

conspiracy."[11] In order to find evidence of the imagined conspiracy, Mischler has made recurring Open Records Act requests, and the Cabinet has provided her copies of non-privileged records related to the now vacated substantiation of child neglect. Plaintiff filed at least one open records appeal regarding her requests to the Kentucky Attorney General's Office. See *In re: Amy Mischler/Cabinet for Health and Family Services,* Ky. Op. Atty. Gen. 08-ORD-014 (Ky. AG 2008), where she requested:

> personnel records of five named Cabinet employees, four categories of records relating to a child support and child protection and permanency case to which she is a party, two categories of records relating to Cabinet policies on CAN database[12] access, records relating to any internal investigations conducted by the Cabinet into her activities, records reflecting any sanctions imposed on employees of Pike County Attorney's Office "for purposely refusing to provide [her] with child support services from June 2005 until the present," the final order in Administrative Hearing No. P07-07-004, and records reflecting "the names of individuals who have accessed [her] records on the CAN database."

The Cabinet released some records, explained that other records did not exist, and objected to producing a photograph of an employee in the employee's personnel file based on the personal privacy exemption. The Kentucky Attorney General's Office upheld the Cabinet's refusal to disclose any record not provided to Mischler, but took issue with the Cabinet not producing records within 3-business days of the request.

---

[11] Mischler most recently wrote Cabinet officials to inform them she learned that back in October of 2006, Shereena Hamilton-Spurlocke made entries in the Cabinet's internal electronic records substantiating her for child neglect. Mischler now claims that Spurlock was a Facebook friend of her ex-husband's sister-in-law. Mischler alleges Spurlocke went to her home in Pikeville in October 2006 and "coerced" her to sign a prevention plan which was her only involvement with Spurlocke. As recently as January 29, 2016, Mischler sent her sworn affidavit to the Cabinet swearing to an "ongoing civil rights violation and fraud" because "she wrote multiple letters to Cabinet investigations" which were ignored. See attached Exhibit 4.

[12] Because of federal funding requirements, all states have central state registries of persons substantiated for child abuse or neglect, but the "registry" does not include persons whose substantiations have been set aside by a court or an administrative law judge. See the federal Child Abuse Protection and Prevention Act, 42 U.S.C. § 5106a *et seq.* ("CAPTA"). Mischler is not included in the Cabinet's child abuse/neglect database, what she calls the Child Abuse and Neglect ("CAN") registry because her substantiation was set aside by a Cabinet administrative hearing officer.

12

More recently, Mischler requested to inspect the same Cabinet investigative records again but she was informed the Cabinet cannot produce them because the Kentucky Department of Libraries and Archives had destroyed the paper copies of the originals. [13] Mischler admitted she still has the photocopies previously provided her. But this destruction of records added fuel to her conspiracy theory.

### F.     Mischler's constitutional claims

In her present federal civil rights complaint, Mischler asserts the following legal claims against the CHFS Defendants, or other named defendants:

Count 1, a Fourth Amendment "fraud" claim, premised on an alleged "conspiracy to retaliate, obstruct justice and otherwise harass Ms. Mischler to prevent discovery of the 4th Amendment violation . . .".[14]

Count 2, a Fourth Amendment "fraud" claim premised on allegations that social worker Hamilton-Spurlocke "never put upon the record she had a conflict of interest being friends with the Stevens family and committed a 4th Amendment Violation . . . ."[15]

---

[13] See attached Exhibit 6, Cabinet response to Plaintiff's open records request.

[14] "Count I" of Complaint, ¶¶ 55-76 [Doc # 1, Page ID # 17-62]. Mischler's only factual basis for this claim appears to be an allegation that "Judge Julie Paxton conspired with Defendant Hall and Jonah Stevens to have Ms. Mischler arrested" sometime in 2006 [Complaint, ¶ 13, Doc 1, Page ID # 8], that Social Worker Sheerena Hamilton Spurlocke spoke to Mischler in her home in April 2006 to develop a prevention plan, allegedly" to spy on her" for her ex-husband [Complaint, ¶ 7, Doc 1, Page ID # 6]; that CHFS Deputy Secretary Feeley and a host of other Cabinet officials over the years have ignored Mischler's grievances [Complaint, ¶ 51, Doc 1, Page ID # 16], and that various Cabinet employees "refused to provide services to Ms. Mischler when Ms. Mischler requested to receive counseling for the severe stress she was under" without ever admitting another employee violated her Fourth Amendment rights "in furtherance of the fraud to coverup (sic) said 4th Amendment violation [Complaint, ¶ 33, 35 Doc 1, Page ID # 12]. Mischler says the CHFS Defendants caused her to have a false belief that CPS worker Hamilton-Spurlocke had jurisdiction to investigate Mischler for child abuse; and that "each act by the Cabinet and Defendants has been in furtherance of the fraud including Deputy Secretary Feeley denying Ms. Mischler any redress of grievances even though she had only (recently) discovered the fraud. [Complaint, ¶¶ 59, 61, Doc 1, Page ID # 18].

[15] "Count II" of Complaint under the heading "Fraud: Purposefully Falsified Documents To Be Used In A Court Proceeding Adjudicating Fundamental Rights" ¶¶ 63-68 of complaint  [Complaint, Doc 1, Page ID # 19].

Count 3, an ambiguous federal claim for acts "in violation of the United States Constitution" for "Constructive Termination of Parental Rights."[16]

Count 4, a "First Amendment violation" claim because Governor Bevin "promised to clean up the KY Cabinet for Health and Family Services" when he ran for office and because someone in the administration allegedly communicated with Sen. Rand Paul that someone would investigate Ms. Mischer's and others allegations."[17]

Count 5, a demand for injunctive relief against Governor Bevin "to take all necessary action MANDATED BY THE KY CONSTITUTION TO ENFORCE THE LAW, including finding a special prosecutor to investigate the Kentucky Judicial System hiring the law firm of Stites & Harbison to "cover up bribery within the Kentucky Court system" and "remove all false records within the Cabinet for health and Family Services that continue to state that Ms. Mischler is a substantiated child abuser" and that the Governor "issue an Executive Order allowing her to have administrative hearings."[18]

In her demand for relief, Plaintiff asks this Court to award her general and compensatory damages, ten percent of the federal funding received by the Cabinet, Kentucky Administrative Office of the Courts, and Attorney General's Office for each year she suffered denial of her rights, costs and her attorney fees, and any other relief as she may appear entitled."[19]

Governor Bevin and the CHFS Defendants have invoked their Eleventh Amendment and sovereign immunity from suit. Alternatively, they move to dismiss the Complaint for failure to state a claim upon which relief can be granted, and lack of Article III jurisdiction.

---

[16] "Count III" of Complaint, ¶¶ 69-76 [Complaint, Doc 1, Page ID # 20]. Liberally construing this allegation it is a Fourteenth Amendment due process violation claim; to which we say Mischler has had all the process due her.
[17] "Count IV" of Complaint, ¶¶ 77-79 [Complaint, Doc 1, Page ID # 21].
[18] "Count V" of Complaint, ¶¶ 80-82 [Complaint, Doc 1, Page ID # 21-22].
[19] "Demand for Damages [Complaint, Doc 1, Page ID # 22].

14

## STANDARD OF REVIEW

A party may assert the lack of subject matter jurisdiction at any time during the course of an action. Fed.R.Civ.P. 12(b)(1) and 12(h)(3); *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939); *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 (6th Cir. 1992). Once challenged, the burden of establishing a federal subject matter jurisdiction rests on the party asserting the jurisdiction. *Thomason v. Gaskill*, 315 U.S. 442 (1942). A motion to dismiss for lack of jurisdiction, particularly in Eleventh Amendment cases under Civil Rule 12(b)(1), must be considered on a claim-by-claim basis. *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005). "Where subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Ernst*, at 372. It is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and federal statutes. *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003).

The CHFS Defendants have also moved to dismiss for failure to state a claim upon which relief can be granted. The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint. *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co*., 513 F.2d 1176, 1182 (6th Cir. 1975). The complaint must be construed "in the light most favorably to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). However, conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). A pair of Supreme Court decisions—*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—confirms that Rule 8 imposes legal and factual demands on the authors of complaints. *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). In the aftermath of these decisions, a plaintiff cannot

15

overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its "factual content," requiring the plaintiff to plead enough "factual matter" to raise a "plausible" inference of wrongdoing. The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct. *16630 Southfield Ltd. Partnership*, 727 F.3d at 504 (citing *Twombly* and *Iqbal*).

The pleadings of pro se litigants are held to a less stringent standard than those drafted by attorneys, and as a consequence, should be liberally construed. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The prolific pro se plaintiff here, however, is a law school graduate. According to her ex-husband, she is a graduate of the Appalachian School of Law, a fully accredited private law school in Grundy, Virginia, although Mischler is not admitted to the bar or licensed. Because her pleading does not pass muster under even the less stringent standard, this Court need not decide whether her complaint should be assessed under the more formal standard applied to lawyer drafted pleadings. "While pro se litigants are afforded significant leeway ..., those who proceed without counsel must still comply with the procedural rules that govern civil cases." *Frame v. Superior Fireplace*, 74 F. App'x. 601, 603 (6th Cir. 2003) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) and *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). Moreover, district courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District courts are also not "required to create"

a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003); *Brown v. Matauszak*, 415 Fed. Appx. 608, 613 (6th Cir. 2011). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs*., 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)). When construing a complaint, even one drafted by a pro se litigant, the court has no duty to "conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). This Court is not required to create a claim for plaintiffs. *Clark v. Nat'l Travelers Life Ins. Co*., 518 F.2d 1167, 1169 (6th Cir. 1975). In other words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen, No. 03-5306*, 500 F.3d 523, 537 (6th Cir. 2007) (emphasis in original, citing *Twombly*, 127 S.Ct. at 1965).

The Sixth Circuit has not spoken with one voice on whether courts must or may resolve the Eleventh Amendment immunity question before addressing the merits. *See Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469, 475-476 (6th Cir. 2006) (citing cases). "The trend in this area seems to favor giving federal courts discretion over the issue." *Nair*, at 469. The Sixth Circuit panel in *Nair* said a state may waive this threshold procedural issue and allow a court to address its arguments for dismissal on the merits in either order. *Nair* teaches that addressing the merits first is sometimes a more "straightforward" way to resolve the entire controversy. The governor and CHFS Defendants have properly invoked sovereign immunity and the Eleventh Amendment as grounds to dismiss Mischler's claims. Nonetheless, under the

17

teachings of *Nair*, judicial efficiency may be achieved by dismissing all the claims barred by the statute of limitations, res judicata, the *Rooker-Feldman* doctrine and the domestic relations doctrine. Movants suggest dismissing the entire case with prejudice. That would eliminate the need for Mischler to spend money locating and serving CHFS Defendants and state judges in their individual capacities, and could expedite the inevitable dismissal of the obviously deficient legal claims. Or the Court may wait and dismiss them under Federal Rule 4(m) when she fails to achieve service of process within the time allowed under the civil rules or however much time this Court grants Plaintiff to serve the many unserved defendants she named.

### ARGUMENT

I.    **PLAINTIFF'S CIVIL RIGHTS COMPLAINT AGAINST THE GOVERNOR AND THE CHFS DEFENDANTS IN THEIR OFFICIAL CAPACITY IS BARRED BY THE SOVEREIGN IMMUNITY OF THE COMMONWEALTH OF KENTUCKY AND BY THE ELEVENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**

Mischler's 42 U.S.C. § 1983 civil rights claims against all the current or former CHFS Defendants officials (and all other state officials named in her Complaint) to the extent they are sued in their official capacity seeking damages or retrospective relief, should be summarily dismissed. These claims are barred by sovereign immunity and the Eleventh Amendment to the Constitution of the United States. CHFS is an arm and an alter ego of the Commonwealth of Kentucky entitled to invoke this immunity. Accordingly, this Court lacks jurisdiction over these claims.  The Eleventh Amendment is a quasi-jurisdictional defense. It provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of a Foreign State.

U.S. Const. amend. XI.

18

As the Sixth Circuit, sitting *en banc*, explained in *Ernst v. Rising*, States "possess[ ] certain immunities from suit in ... federal courts." 427 F.3d at 358 (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999); *Monaco v. Mississippi*, 292 U.S. 313, 322-23, 1282 (1934); and *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). The "immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Id*. (citing *Alden*, 527 U.S. at 713-14). "The immunity also applies to actions against state officials sued in their official capacity for money damages." *Id*. (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 623 (2002); *Edelman v. Jordan*, 415 U.S. 651, 664-66 (1974)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," i.e., against the State. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Kentucky has not waved immunity for Section 1983 claims.

Under the fiction of *ex parte Young*, a plaintiff may sue a state official for prospective injunctive relief enjoining an official from violating federal law in the future. *See Ex Parte Young*, 209 U.S. 123 (1908). Official capacity claims against former public officials are not allowed. *See, Committee to Protect our Agricultural Water v. Occidental Oil and Gas Corporation*, 235 F. Supp. 3d 1132, 1163 (E.D. Cal. 2017).[20] Moreover, the Sixth Circuit has held that injunctive relief pursuant to *Young* may not be sought "when a defendant state official has neither enforced nor threatened to enforce an allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir.1996). Federal courts also lack authority to make retrospective declaratory judgments. *See Green v. Mansour*, 474 U.S. 64 (1985). "General

---

[20] The rationale that has typically been offered by courts reaching this conclusion is that former government officials are "no longer in a position to provide injunctive relief

19

authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging [a] law." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015), quoting *1st Westco Corp. v. Sch. Dist. of Phila*., 6 F.3d 108, 113 (3rd Cir.1993). *Accord*, *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (finding Governor Brown was entitled to Eleventh Amendment immunity with respect to claims for prospective injunctive relief based on his alleged involvement in administering a state law plaintiffs claimed was unconstitutional, because "his only connection to [the relevant statute] is his general duty to enforce California law").

In *Children's Healthcare*, the Sixth Circuit found that plaintiffs were not complaining of "action, but inaction" and thus *Ex Parte Young* did not apply. *Id*. This Court reached the same conclusion in *Bailey v. Montgomery*, 433 F. Supp. 2d 806, 811 (E.D. Ky. 2006). Bailey was only complaining of past actions of Kentucky Transportation Cabinet officials and did not allege present, ongoing conduct that was violative of his federal rights. Further, there was no allegation of threatened illegal conduct. Rather, he sought an adjudication of the legality of past state conduct; which did not fall under *Young*. This Court also followed *Children's Healthcare* when it dismissed Mischler's federal complaint seeking an injunction against Kentucky Chief Justice Minton because he was not threatening to take any action against her. *See Mischler v. Stevens*, 7:13-CV-8, 2014 WL 1378805, at *7. It should do so now with respect to all her reconfigured claims asserted against Governor Bevin and the CHFS Defendants. Neither the governor nor any of the CHFS Defendants are alleged to be taking any current actions against Mischler. She is suing them not for action, but alleged inaction. As this Court already held in the prior Mischler case, this is not permitted under *Young* and is a type of claim barred by the Eleventh Amendment.

Mischler also cannot bring an action in federal court against the governor and Cabinet administrators or supervisors to compel them to enforce the Kentucky Constitution or any state laws that Plaintiff demands of them in "Count V" of her complaint. She wants this Court to tell the governor how to exercise his discretionary powers under Section 81 of the Kentucky Constitution. That provision entitled "Governor to enforce laws" provides: "He shall take care that the laws be faithfully executed." This is Plaintiff's only excuse to sue Governor Bevin. He was not even in office when the alleged underlying Fourth or Fourteenth Amendment violations occurred.

Obviously, the Eleventh Amendment bars this claim. Mischler wants to compel the governor to appoint a special prosecutor to investigate the Kentucky judicial system and direct the Cabinet to remove records she imagines still exist substantiating her for child neglect. In *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), the Supreme Court said:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* at 106. Accordingly, *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law." *Id. See also Ernst v. Rising*, 427 F.3d at 369 ("As requests for relief tied to state-law claims, we need not consider whether they are monetary or injunctive in nature, because they may not form the basis for an exception to state sovereign immunity in the federal courts in either event."). Count V of the Complaint is plainly outside the scope of the power granted federal courts and is undoubtedly barred by the Eleventh Amendment. Because that is the only claim aimed at Governor Bevin, he must be summarily dismissed as a defendant from this case with prejudice, whatever else this Court does with respect to Plaintiff's other claims.

Moving on to the claims against the CHFS Defendants, Plaintiff is complaining about events that occurred over ten years ago stemming from her contentious state court child custody litigation with her ex-husband. In particular, Mischler alleges a state social worker named Shereena Hamilton Spurlocke "without legal jurisdiction and under false pretenses violated Ms. Mischler's 4th Amendment right to privacy of her home." She alleges the social worker gained entry under false pretenses to spy on her for Jonah Stevens. Mischler says the social worker did not disclose her "close friendship" with Stevens' sister-in-law Defendant Selena Woody Stevens.[21] This vague implausible and conclusory allegation is insufficient to support a new Fourth Amendment claim against Hamilton-Spurlocke, much less indicate the Cabinet is taking any current action against Mischler. When the now vacated DVO issued and Mischler was substantiated for child neglect, it was Spurlocke's job as an ongoing worker to come up with a plan to safely care for the children. It is implausible that the worker entered Mischler's home to "spy" on her for the ex-husband.

Plaintiff should have known that she may not bring federal claims to force state officials to do her bidding, and that she may not sue CHFS Defendants in their official capacities for damages under the federal Civil Rights Act. Not only is she a law school graduate, but Mischler has previously made similar claims against other Kentucky officials who have been dismissed from her prior federal cases based on the same sovereign immunity or the Eleventh Amendment. *See Mischler v. Lambert*, 3:08CV-231-M, 2008 WL 4327444, at *5 (W.D. Ky. Sept. 19, 2008) (dismissing the Kentucky Bar Association and Judicial Conduct Commission based on Eleventh Amendment immunity); *Mischler v. Clary*, 16-6184, 2017 WL 3220478, at *3 (6th Cir. May 16, 2017), affirming dismissal of claims against the Kentucky Supreme Court and judicial officials named in their official capacity as barred by the Eleventh Amendment).

---

[21] Complaint, Doc # 1, ¶ 7, Page ID # 6-7.

It is also likewise "well established" that CHFS is an arm of the state that is entitled to invoke Kentucky's immunity from suit on behalf of itself or any employee sued for damages in his or her official capacity. *See Fleet v. Commonwealth of Kentucky Cabinet for Health & Family Services*, 2016 WL 1241540, at *3 (W.D. Ky. Mar. 28, 2016) (citing cases); *LeBlanc v. Hagan*, 2017 WL 2779490, at *6 (W.D. Ky. June 27, 2017); *Wombles v. Cabinet for Health and Family Services*, 2008 WL 4443019, at *2 (E.D. Ky. Sept. 26, 2008); and *Hatfield v. Cabinet for Health and Family Services*, 2014 WL 1246354, at *2 (E.D. Ky. Mar. 25, 2014).

The Commonwealth of Kentucky has not waived its immunity, *Adams v. Morris*, 90 Fed. Appx. 856, 857 (6th Cir. 2004); *Mischler v. Clary*, 2017 WL 3220478, at *3, and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states, *Quern v. Jordan*, 440 U.S. 332, 341–42, 344–45 (1979); *Whittington v. Milby*, 928 F.2d 188, 193–94 (6th Cir. 1991) (recognizing that § 1983 claims against a predecessor state agency was barred by the Eleventh Amendment); *Sefa v. Kentucky*, 510 Fed. Appx. 435, 437 (6th Cir. 2013) (affirming dismissal of pro se complaint naming CHFS). This immunity extends to all the Cabinet's agents and employees and also immunizes County Attorneys and their employees when they subcontract with the Cabinet to enforce child support obligations. *See Lamb v. Wallace*, 16-6253, 2017 WL 3597004, at *2 (6th Cir. July 13, 2017), citing with approval, *Benton v. Louisville Kentucky Child Support Div.*, 2013-CA-001250-MR, 2014 WL 1556518, at *1 (Ky. App. Apr. 18, 2014) (explaining that county attorneys are agents of the Cabinet in child support matters).

In summary, the governor and CHFS Defendants are immune from the burdens of litigation insofar as they have been named in their official capacity. Those claims must be dismissed.

**II.     PLAINTIFF ALSO LACKS STANDING TO SUE THE GOVERNOR OR ANY CHFS DEFENDANTS FOR PROSPECTIVE RELIEF AND THIS COURT LACKS ARTICLE III JURISDICTION TO GRANT SUCH RELIEF**

"In order to fall within the *Ex parte Young* exception referenced above, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). While a claim for an injunction may be maintained against a state official in her official capacity, a plaintiff must have standing to advance such a claim. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). Mischler lacks standing to seek prospective injunctive or declaratory relief because her children have reached the age of majority. Any claims about their custody or child support is now moot. She cannot sue for anyone but herself. A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "Further, a plaintiff must have standing for each claim he asserts." *Cohn v. Brown*, 161 Fed.Appx. 450, 454–56 (6th Cir. 2005); see *Lyons*, 461 U.S. at 105 (finding that a plaintiff's standing for damages claim does not establish his standing to seek injunctive relief). Although Mischler might potentially have standing to sue under § 1983 for past federal constitutional harms (if those claims were not barred by the statute of limitations), she "must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm." *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015).

Although such relief is not definitively sought in Mischler's Complaint against the CHFS Defendants, she did file an "emergency motion" against Governor Bevin because he has not assured her the Cabinet will not destroy records again, and she seeks relief against him in Count V of her complaint. But Mischler lacks standing to sue the governor and CHFS Defendants for any prospective injunctive relief. To demonstrate Article III standing, "a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

24

by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[T]o have standing to seek an injunction against purportedly illegal future conduct by a state official, a plaintiff must show a 'real and immediate threat' of injury; past exposure to illegal conduct, by itself, is insufficient." *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012) (citing *Lyons*, 461 U.S. at 102–03); *accord Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (noting that "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury").

Mischler has not established sufficient injury in fact to seek injunctive relief to enjoin the Cabinet from "conspiring against her" or "defrauding" the federal government. Claims about past events are moot. Plaintiff is not a taxpayer in Kentucky so she cannot sue asserting taxpayer standing. Nothing can be done about any records destroyed by the State Libraries and Archives in the past. The Complaint is therefore insufficient to establish injury-in-fact required to confer standing on Plaintiff to sue for declaratory and injunctive relief. Unless a past injury is accompanied by continuing, present adverse effects, it does not in itself show a present case or controversy regarding injunctive relief. *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Mischler has not pleaded any continuing, present adverse effects necessary to show a present case or controversy for injunctive relief. And, given that Plaintiff lives in Florida and Mischler's youngest child (who lived with her ex-husband) reached the age of majority on August 22, 2017 (Complaint ¶ 52), any threat of future injury to Plaintiff being investigated for child neglect again in Kentucky is purely speculative (if not logically impossible). "[W]here the threat

25

of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell v. Ohio Supreme Court,* 252 F.3d 828, 833 (6th Cir. 2001) (citing *Lyons*, 461 U.S. at 109). A case with similar facts from the Western District is instructive:

In *Handley v. Coursey*, No. 1:15-CV-00056-GNS-HBB, 2015 WL 3581002 (W.D. Ky. June 5, 2015), the plaintiffs claimed CHFS social workers in the past had interfered with their parental rights by "coercing and forcing" parents to relinquish custody of the children with the assistance of the Barren County Sheriff's Department and other law enforcement agencies and they sought an injunction to prevent future occurrences. Judge Stivers denied such relief, finding that the threat of the plaintiffs' future injury was highly conjectural and too tenuous, resting on a string of actions the occurrence of which was merely speculative. *Id.* at *3. This case is similarly speculative and deficient to seek injunctive relief against any named defendant.

Indeed, the threat of Mischler's future injury by the CHFS Defendants is even more speculative than in *Handley*. Her youngest son has reached the age of majority. Mischler lives in Florida. It is very unlikely that Plaintiff will return to Kentucky, conceive new children or become a caregiver of other children in the Commonwealth; and then be investigated for child abuse or neglect; or any Cabinet record investigating her will be accidently destroyed by the Kentucky Department of Libraries and Archives, ostensibly violating Plaintiff's constitutional rights again sometime in the future.  This Court should therefore hold the Eleventh Amendment and lack of Article III jurisdiction defeat all nonmonetary claims asserted or implied in the Complaint.

### III. PLAINTIFF'S CIVIL RIGHTS COMPLAINT AGAINST THE CHFS DEFENDANTS SEEKING DAMAGES FOR PAST CONDUCT FAILS AS A MATTER OF LAW

If this Court chooses to do so, it may also dismiss the entire Complaint, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. There are a multitude of

obvious reasons to do so here without waiting for Plaintiff to serve process on CHFS Defendants named in their individual capacities, as dismissal on the merits is inevitable if they are ever found.

### A.    Plaintiff's Complaint is deficiently pleaded

42 U.S.C. § 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. The first step in any § 1983 analysis is to pinpoint the specific constitutional right which was allegedly violated. *Graham v. Connor*, 490 U.S. 386, 394 (1989). As the United States District Court for the Western District of Kentucky recognized in *Crawford v. Child Protective Services*, No. 3:07CV-21-H, 2007 WL 2772740, *2 (W.D. Ky. Sept. 20, 2007), Section 1983 has two basic requirements:  (1) the deprivation of federal statutory or constitutional rights by (2) a "person" acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Plaintiff cannot establish these prerequisites to file a Section 1983 claim against the CHFS Defendants. Her allegations are simply not plausible. Section 1983 actions must satisfy the pleading standards established by the Supreme Court in the *Twombly* and *Iqbal* pleading standard cases. Under this standard, a plaintiff must provide the grounds for his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "'merely consistent with' a defendant's liability," *id*. at 678 (quoting *Twombly*, 550 U.S. at 557), or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct," *id*. at 679. Instead, the allegations must "'show[ ] that

27

the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a public official is named as a defendant in a federal complaint without any allegation of specific factual conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant). Most of the CHFS Defendants are named here without any supporting facts. Conclusory legal averments against them are not sufficient. Complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. *See, e.g.*, *Terrance v. Northville Reg. Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) ("This court has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right.") (citation omitted) (emphasis in original). As the Tenth Circuit has observed, the *Iqbal/Twombly* pleading standard "may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). By impermissibly lumping all the CHFS Defendants together in her complaint bereft of specific factual allegations, Mischler's complaint should be deemed deficiently pleaded and summarily dismissed.

Moreover, Plaintiff cannot, under the federal civil rights laws, sue Cabinet officials for conduct they were not alleged to have participated in. An individual governmental officer is liable only for his or her own conduct, not the misconduct of others. Thus a plaintiff must allege that a given defendant "[was] personally involved in the alleged deprivation of federal rights." *Nwaebo v.. Hawk–Sawyer*, 83 F. App'x 85, 86 (6th Cir.2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373–77 (1976)). "Merely acting as a supervisor is not enough: respondeat superior is not an available theory of liability." *Hatfield v. Cabinet for Health and Family Services*, CIV. 5:13-222-KKC, 2014 WL 1246354, at *3 (E.D. Ky. Mar. 25, 2014), citing *Polk County v. Dodson*, 454 U.S. 312, 325–26 (1981). Plaintiff has not alleged Cabinet supervisors entered her home or otherwise violated the Fourth or Fourteenth Amendments. Therefore, all the supervisors and managers must be dismissed.

### B.    The Commonwealth of Kentucky is not a "person" under 42 U.S.C. § 1983

The official capacity damage claims against the CHFS Defendants also fail as a matter of law. The Commonwealth of Kentucky, and its central branch agencies are not "persons" acting under color of state law for § 1983 purposes. Neither are its employees when sued in their official capacity for damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Consequently, under the "*Will* doctrine" Mischler cannot sue the CHFS Defendants in their official capacities for damages. *See Sefa v. Kentucky,* 510 Fed. Appx. at 437*; Fleet v. Commonwealth of Kentucky Cabinet for Health & Family Services, supra*, 2016 WL 1241540, at *3; and *Handley v. Coursey, supra,* 2015 WL 3581002, at *3.  (W.D. Ky. June 5, 2015). The holding in *Will* forecloses Plaintiff suing the CHFS Defendants in their official capacity for damages in a Section 1983 civil rights action. This is a defect that is incapable of curing by amending the Complaint.

### C.    Mischler's Fourth Amendment claim against the CHFS Defendants fails as a matter of law and is time barred

The only potential CHFS Defendant alleged to have entered into Mischler's home was

29

social worker Shereena Hamilton-Spurlocke when she was invited into the home to discuss a prevention plan with Plaintiff in November of 2006. Contrary to what Plaintiff imagines as part of her ever morphing and growing ameba-like conspiracy theory, this worker substantiated child neglect based on Cabinet policy to follow the lead of courts when they make factual findings of child abuse or neglect. It is undisputed that the DVO found that Mischler was neglectful. Therefore, the Cabinet was obliged to work with Plaintiff on a prevention plan to help her overcome or work through her problems. The need to prepare a prevention plan was not instigated by the worker; it was caused by the issuance of a DVO by a state judge. Mischler admits she freely agreed to talk to the worker in her home.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. U.S. Const. amend. IV. However, government officials do not violate the Fourth Amendment when granted permission to enter a home as Mischler admits occurred here. As the First Circuit has said:

> An ordinary person who knocks on a door and receives assent may properly consider himself an invited guest, and would be so considered by the courts; the householder would not be permitted to base a claim of trespass upon the assertion that in his heart he did not wish to admit his caller. Similarly, the fourth amendment, while it requires that a policeman seeking admittance to a private residence must fully regard the rights of the householder, does not require him to be clairvoyant.

*Robbins v. MacKenzie*, 364 F.2d 45, 49 (1st Cir. 1966).

The Sixth Circuit has observed that state officials may be kept out or invited in as informally as any other guest. *See United States v. Carter*, 378 F.3d 584, 589 (6th Cir. 2004) (citing *Robbins*). Mischler invited the Cabinet's social worker into her home to discuss the needed prevention plan. She cannot assert a Fourth Amendment violation under those facts. The idea that the worker was secretly sent to spy on Plaintiff is the type of fantastical delusional theory not worthy of credence, but regardless of what Plaintiff now asserts, her invited entry also eliminates

30

any viable Fourth Amendment claim.

Moreover, any claim of a Fourth Amendment violation from an event that Plaintiff admits occurred in November of 2006 is barred by Kentucky's statute of limitations. It is well established that § 1983 actions in Kentucky are limited by the one-year statute of limitations found in KRS § 413.140(1)(a). *Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *Mischler v. Clary*, 3:13-CV-26, 2016 WL 3849817, at *6 (E.D. Ky. July 11, 2016), aff'd, 16-6184, 2017 WL 3220478 (6th Cir. May 16, 2017); *Mischler v. Stevens*, 7:13-CV-8, 2014 WL 1378805, at *4 (E.D. Ky. Apr. 8, 2014). This case was filed on August 24, 2017; far too late to complain about any events that happened in 2006.

### E.   Plaintiff's Fourteenth Amendment claim fails as a matter of law and is time-barred

Plaintiff contends she had her parental rights constructively terminated in violation of state law and the United States Constitution. She blames the judicial defendants for turning a blind eye to the unfair situation, obstructing justice and accuses one judge of bribing another. It is not clear if the CHFS Defendants are included in Count III or what constitutional rights is inferred. If Plaintiff is bringing a procedural due process Fourteenth Amendment claim it fails because she has not alleged the lack of an adequate state remedy, among other defects to this claim.

"'Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). As it concerns procedural due process, "the deprivation of property by state action is not itself unconstitutional; 'what is unconstitutional is the deprivation of such an interest without due process of law.'" *Id.* (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995)). In this case Plaintiff's parental rights were not

31

terminated. She was not granted primary custody. The state judges that decided custody, or affirmed the judgment are absolutely immune from suit for their judicial decisions, as this Court and other courts have repeated held in all of Mischler's prior cases. The fact that she appealed and lost does not mean Kentucky did not afford Plaintiff an adequate state remedy. In § 1983 damage suits claiming the deprivation of a property or liberty interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Where the state remedy is considered to be adequate, a § 1983 action cannot be maintained. *Haag v. Cuyahoga County*, 619 F. Supp. 262, 279 (N.D. Ohio 1985), a*ff'd*, 798 F.2d 1414 (6th Cir. 1986).

Moreover, Congress expanded the scope of judicial immunity to bar some claims for injunctive relief through a 1996 amendment to 42 U.S.C. § 1983. "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Courts in the Sixth Circuit have dismissed claims against state court judges for injunctive relief on the basis of § 1983, and not only the judges also other state officials named. *See, e.g.*, *Coleman v. Governor of Mich.*, 413 Fed.Appx. 866, 873 (6th Cir. 2011) (stating that § 1983 extends judicial immunity to suits for equitable or injunctive relief); *Rembert v. Fishburn,* No. 3:15-cv-0949, 2015 WL 5842149, at *3 (M.D. Tenn. Oct. 6, 2015) (granting judicial immunity in suit for injunctive relief); *Ciavone v. Slavens*, 2:14–13133, 2014 WL 4414504, at *3 (E.D. Mich. Sept. 8, 2014 (stating that § 1983 extends judicial immunity to suits for equitable or injunctive relief); *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 446–48 (E.D. Mich. 2006) (dismissing claim where the plaintiff did not allege "that the Judicial Defendants violated a declaratory decree or that declaratory relief was unavailable at any relevant time"). In any event, neither the Governor

nor the CHFS Defendants are responsible for the family courts deciding Plaintiff's ex-husband should be awarded primary custody of her children. Any complaint about the custody decision is also clearly long ago barred by the one year statute of limitations.

### F.        Plaintiff's First Amendment claim fails as a matter of law and is time-barred

In Count IV of her complaint, Mischler alleges Governor Bevin and CHFS Deputy Secretary Feeley violated the First Amendment when they ignored her "newly discovered information she says received in 2016." First, this complaint is time-barred because Mischler waited until August 24, 2017 to file suit, more than one year after she first began communicating to Governor Bevin's office and Deputy Commissioner Feeley about her perceived grievances.

This claim would fail if it had been timely filed. The First Amendment right to petition government is well established, but Plaintiff has no right to compel state officials to do her bidding. As the Sixth Circuit observed, "neither in the First Amendment nor elsewhere in the Constitution is there a provision guaranteeing that all petitions for the redress of grievances will meet with success." *Canfora v. Olds*, 562 F.2d 363, 364 (6th Cir. 1977). *Accord*, *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."). Accordingly, her First Amendment claims fail as a matter of law. Indeed, the *Apple* opinion shows the claim is so frivolous and insubstantial that if Plaintiff had not paid a filing fee, the claim would be subject to screening and dismissal by this Court.

### E.  Plaintiff's complaint is barred by claim preclusion, issue preclusion and the *Rooker-Feldman* doctrine

Mischler has already litigated and lost her same claims when she filed her previous federal civil rights actions against the Kentucky judiciary and her ex-husband. One of her prior state court cases included a negligent supervision claim against a Cabinet supervisor. And Plaintiff recently

33

litigated and lost these same claims when the Kentucky Franklin Circuit Court dismissed her recent lawsuit against the CHFS, the Governor and the Attorney General in Civil Action No. 17-CI-980. These prior cases preclude Mischler's Complaint.

In considering whether to give preclusive effect to a state court judgment under res judicata in a federal action, "the federal court must apply the law of the state in which the prior judgment was rendered." *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999) (citations omitted); see also *Stemler v. Florence*, 350 F.3d 578, 586 (6th Cir. 2003). The purpose of claim preclusion "is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981). Under Kentucky law, when a court of competent jurisdiction has entered final judgment on the merits in an action, the parties to the suit and their privies are bound by the decision. *Mischler v. Stevens*, 7:13-CV-8, 2014 WL 1378805, at *6.  In Kentucky, this part of the test as to the "merits" of an action is construed broadly. "[T]he plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Holbrook v. Shelter Ins. Co.*, 186 Fed. Appx. 618, 621 (6th Cir. 2006), citing *Combs v. Prestonsburg Water Co.*, 260 Ky. 169, 84 S.W.2d 15, 18 (1935) (internal quotation omitted).

Public officials are in privity with their employer when they are named in their official capacities. *See Heike v. Central Michigan University Bd. of Trustees*, 573 Fed. Appx. 476, 481 (6th Cir. 2014), holding CMU stood in privity with its coaches and administrators because the plaintiff sued those individuals in their official capacities in an earlier case. At least one prior Cabinet supervisor was sued by Mischler in her individual capacity so the privity extends to other

34

Cabinet supervisors, in their individual capacities.  The *Heike* court cited with approval Moore's Federal Practice § 131.40[3][e][ii] (3d ed. 2014) ("A government official sued in his or her official capacity is considered to be in privity with the government."). *Id.*, at 481.

Collateral estoppel, commonly referred to as issue preclusion, is another related affirmative defense "which prohibits issues [that] were adjudicated in a previous lawsuit from being relitigated in a subsequent lawsuit." *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 660 (E.D. Ky. 2012), quoting *Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 871 (Ky. 2011). This defense is "properly asserted by a person who was not a party to the former action nor in privity with such a party." *Id*. at 872 (internal quotations omitted). It permits the non-party to a use the prior outcome against a party to that prior action, "so as to preclude the relitigation of an issue determined in the prior action." *Id*. (quoting *Moore v. Commonwealth of Kentucky*, 954 S.W.2d 317, 319 (Ky.1997)).

Both preclusion doctrines apply here and defeat all of Plaintiff's damage claims. Plaintiff's divorce decree and custody decree is final and cannot be collaterally attacked, which means she has not unlawfully been denied custody of her children. Simply put, claims against Cabinet social workers in their official capacities are legally indistinguishable from her claim against the Cabinet. *Cabinet for Health and Family Services v. Hicks*, 2009-CA-002186-MR, 2010 WL 3604161, at *3 (Ky. App. Sept. 17, 2010). Accordingly, a prior judgment for an official in his or her official capacity will preclude a subsequent action on the same claim (or a claim that could have been brought in the first action) against the relevant governmental entity, or vice versa. *Heike, supra*.

It does not matter that Plaintiff may not have raised the exact same claims against all the prior Cabinet defendants. She litigated and lost her negligent supervision case against CHFS and Governor Bevin in her recent Franklin Circuit Court case. She litigated and lost her earlier case when she sued CHFS Service Region Administrator Susan Howard. Under these facts, a perfect

identity of the parties is not required, only a substantial identity of interests that are adequately presented and protected by the first litigant. Consequently, Mischler litigating and losing in Franklin Circuit Court, Civil Action No. 17-CI-980[22] and in Franklin Circuit Court, Civil Action No. 08-CI-01039, and in all her prior federal cases preclude her asserting the same claims here. As the Sixth Circuit said in *Heike*:

> One purpose of claim preclusion is to compel litigants to bring all related claims in a single lawsuit. *Wilkins v. Jakeway*, 183 F.3d 528, 532 n. 4 (6th Cir.1999). Thus, the third element of claim preclusion not only prohibits parties from bringing claims they already have brought, but also from bringing those claims they should have brought. *Sanders*, 973 F.2d at 482. A plaintiff should have litigated two claims in his or her first suit, and thus may not litigate the second claim later, where, as here, the two claims "arose from the same transaction, or series of transactions." *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 529 (6th Cir.2006).

*Heike v. Central Michigan University Bd. of Trustees*, 573 Fed. Appx. at 482.

Moreover, to the extent Plaintiff seeks relief with respect to any final judgments in state court those claims are barred by the *Rooker–Feldman Doctrine*. As explained to Mischler in the 2014 *Mishler v. Stevens* case:

> Under that doctrine, a federal district court may not sit in direct review of state court decisions and orders. *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).
>
> The Supreme Court has reiterated that the *Rooker–Feldman* Doctrine applies to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).

The Pikeville Division of this Court has already held Mischler had ample opportunity and time to initiate the appellate review process provided for under the Kentucky Rules of Civil Procedure. It held she has either taken advantage of those opportunities or failed to assert them in

---

[22] It does not matter if Plaintiff appeals from the recent Franklin Circuit Court judgment. Under Kentucky law, "the pendency of an appeal does not destroy the finality of the [circuit court's order] for the purposes of issue preclusion." *Epps Chevrolet Co. v. Nissan N. Am., Inc*., 99 F. Supp. 3d 692, 701-02 (E.D. Ky. 2015).

36

her state court matters. Federal courts lack jurisdiction to review a case litigated and decided in state court because only the United States Supreme Court has jurisdiction to change state court judgments. *See Rooker*, 263 U.S. at 415; *Feldma*n, 460 U.S. at 476; *Gottfried v. Medical Planning Servs. Inc.*, 142. 326, 330 (6th Cir.1998). That is also true with respect to her current Complaint.

As was true before, Mischler's Complaint is in substance a request for this Court to review the underlying state court judgments based on her claims that the state judgments themselves violate her federal constitutional rights. Her constitutional claims are still inextricably intertwined with the underlying state court judgments. The allegations of the instant Complaint arise out of various domestic relations proceedings in the Kentucky state courts. As this Court noted before, apparently unhappy with her state court results, and having failed to obtain relief from the Kentucky appellate courts, and having not been allowed to have another bite at the apple by seeking to overturn the results of the state court proceedings in her prior federal cases, she now seeks a third or fourth bite at the apple by suing the CHFS Defendants, the governor and all the same judges she sued last time. Preclusion principles and *Rooker-Feldman* bar this Complaint.

**F.  Plaintiff's complaint is barred by various abstention doctrine and other jurisdictional and equitable defenses**

Mischler's claims could also be dismissed for lack of subject matter jurisdiction pursuant to the *Younger* abstention doctrine. "*Younger* abstention requires federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 40-41 (1971)). In *Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008), the court held:

> Three factors determine whether a federal court should abstain from interfering in a state court action: (1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge.

37

*Id.* at 775 (citation omitted).

In regards to the first issue, Plaintiff's most recent state court case was dismissed by the Franklin Circuit Court, but the time to appeal may not yet have expired. If she does not appeal and the judgment becomes final, then res judicata bars this action. But if she does appeal, it will constitute an ongoing state action, where she can argue the Franklin Circuit Court erred by not granting her relief. As to the second issue, "*Younger* abstention is grounded in "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.

We have already explained why federal courts do not interfere with state court claims and why Kentucky has an important state interest in the executive branch of state government enforcing the Kentucky Constitution as it sees fit, especially here where Mischler seeks mandamus relief against the governor on how to exercise his discretionary duties.

As this Court also observed *in Johnson Bonding Co., Inc. v. Com. of Ky.*, 420 F.Supp. 331 (E.D. Ky. 1976), when a bail bonding company brought a challenge to the constitutionality of act passed by Kentucky General Assembly making it unlawful to engage in business of bail bondsman and sought a three-judge court to consider its claim, the authority of Section 81 of the Kentucky Constitution does not vest Kentucky's governor with such power to enforce law that would justify making him party to any injunction proceeding by someone who claims to be aggrieved by the exercise of such powers. The power of Kentucky's governor is similar to the power of the President of the United States, who is charged in Article 2, Section 3, of the Constitution with the duty to 'take care that the laws be faithfully executed." Neither injunction nor mandamus will lie to control

38

the exercise of the discretionary power of the President of the United States or any executive officer of the United States. "The interference of the Court with the performance of the ordinary duties of the executive departments of the [federal] government would be productive of nothing but mischief; and this power was never intended to be given to them." *Decatur v. Paulding*, 39 U.S. 497, 503 (1840). Likewise, federal courts do not interfere with the discretionary powers of state executive branch officials in deciding how to perform their state constitutional duties. Lastly, Kentucky affords Mischler a right to appeal any adverse state court judgment. All three factors, therefore, weigh against the Plaintiffs which warrants dismissal of this case under the *Younger* abstention doctrine.

Finally, Mischler's claims may be additionally be barred by the domestic relations doctrine. The root of all her litigation over the past 10-years is her displeasure with child custody decision she litigated and lost in Kentucky state courts. All her recurring federal claims against all the named defendants stem from those cases. "Generally, federal courts have no jurisdiction over domestic relations matters. Rather, state courts have exclusive jurisdiction over these matters." *Danforth v. Celebrezze*, 76 Fed. Appx. 615, 616 (6th Cir. 2003) (citing *Ankenbrandt v. Richards*, 54 U.S. 689, 703-04 (1992)). "Although this domestic relations exception to federal jurisdiction does not apply to a civil action that merely has domestic relations overtones, federal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relation issues." *Id*. (internal citations omitted). In other words, just because a plaintiff "styles his claim as a civil rights violation [it] does not change this calculus." *See Rigney v. Hesen*, No. 3:12-CV-541-R, 2013 WL 3475449 (W.D. Ky. July 9, 2013) (citation omitted). In determining whether the domestic relations exception applies, "we must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-

39

custody decrees?" *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015) (citation omitted).

Plaintiff does not come out and ask this Court to negate now moot state custody orders. However, to award her damages based on this Court invalidating those decisions would also require this Court apply Kentucky child custody law, question the state family court's custody determinations, and address the merits of that state family court's determination of her fitness as a parent. These considerations are what the domestic-relations exception was designed to prevent. *See Stone v. Child Protection Service*s, 4:16CV-69-JHM, 2016 WL 4821371, at \*5 (W.D. Ky. Sept. 9, 2016). The domestic relations doctrine provides yet another reason to dismiss this case.

## CONCLUSION

For all the reasons argued above, this Court must dismiss Plaintiff's Complaint and each cause of action she asserts against the CHFS Defendants and Governor Bevin, with prejudice and the Court should impose appropriate sanctions and filing restrictions upon Plaintiff as requested by separate motion

Respectfully Submitted,

/s/ *D. Brent Irvin*
D. Brent Irvin
Assistant Counsel
Catherine York
Deputy General Counsel
CHFS, Office of Legal Services
275 East Main Street 5W-B
Frankfort, KY  40621
(502) 564-7905
Brent.Irvin@ky.gov
*Counsel for Governor Matt Bevin*
*and the CHFS Defendants, in their*
*official capacities.*